UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELGIN JAMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:09CV2066 RWS |
| v. | ) |
| | ) |
| THE BOARD OF CURATORS OF THE | ) |
| UNIVERSITY OF MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND OPINION

Plaintiff Elgin James' complaint alleges that he developed bedsores resulting from the negligent care provided to him while he was a resident of a rehabilitation center operated by the University of Missouri. Defendants have moved to dismiss and seek summary judgment on several counts brought by James. Defendants also move to transfer venue of this matter to the United States District Court for the Western District of Missouri. I will grant Defendants' motion to dismiss and for summary judgment in part. I will deny Defendants' motion to transfer this matter to the United States District Court for the Western District of Missouri as moot. I decline to exercise jurisdiction over the remaining state claim and will dismiss the case.

*Background*

Plaintiff alleges that the University of Missouri, through Defendant Board of Curators, controls an entity known as University of Missouri Health Care. That entity operates the Missouri Rehabilitation Center, a long-term acute care hospital in the city of Mount Vernon, Missouri. James alleges he was a resident patient at the Center from November 1, 2007 through December 18, 2007. During his stay James was paralyzed from the neck down. He alleges that

he developed pressure sores (bedsores) while at the Center due to the negligence of the staff.

In this lawsuit James sued the Board of Curators as the operators of the Center. He alleges that Defendants John Does 1 and 2 are medical doctors who are co-directors of the Center. Defendants Mosbah Kreimid, M.D and John Does 3 through 8 are medical doctors alleged to have been James' attending physicians during his stay at the Center. Defendants Jane Does 1 through 25 are registered nurses who allegedly participated in the care and treatment of James while he was a patient at the Center.

James alleges the following counts in his complaint:

Count I -   Defendants violated 42 C.F.R. § 483.25[1] by negligently failing to ensure James did not develop pressure sores while at the Center;

Count II -   Defendants violated Missouri Revised Statute § 198.093 by subjecting James to abuse and neglect resulting in bedsores;

Count III -   Defendants John Does 1 and 2 committed medical malpractice by negligently allowing James to develop bedsores;

Count IV -   Defendants Mosbah Kreimid, M.D. and John Does 3 through 8 committed medical malpractice by negligently allowing James to develop bedsores;

Count V -   Defendants Jane Does 1 through 25 committed medical malpractice by negligently allowing James to develop bedsores;

---

[1] In his complaint James asserts a claim under 42 U.S.C. § 483.25. In their motion to dismiss, Defendants point out that this statute does not exist. In response to the motion to dismiss James asserts that the citation to 42 U.S.C. § 483.25 was a typographical error and he meant the bring a claim under 42 U.S.C. § 483.25. Although James has not formally moved to amend his complaint to correct this error, I liberally construe his response to the motion as a motion to amend by interlineation and grant the motion.

Count VI -   Defendant Board of Curators denied benefits to and discriminated against James in allowing him to develop bedsores because he is an African American in violation of 42 U.S.C. § 2000d.

The Board of Curators and Dr. Kreimid, the only identified defendants in this matter, have filed several motions to dismiss based on a lack of jurisdiction and for failure to state a claim, a motion to transfer the case, and a motion for summary judgment.

*Legal Standard*

When ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a district court is free to review matters outside of the complaint such as affidavits and documents. Osborn v. United States, 918 F.2d 724, 729-31 (8th Cir. 1990). Unlike a decision based on a Rule 12(b)(6) motion, a court's review of information outside of a complaint does not convert a Rule 12(b)(1) motion into a Rule 56 motion for summary judgment. Id. A Rule 12(b)(1) motion is distinct in that, unlike a Rule 12(b)(6) motion, when a factual challenge to jurisdiction is made by a movant there is no presumptive truthfulness attached to a plaintiff's allegations in the complaint. Id. at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977)).

In ruling on a motion to dismiss under Rule 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to Plaintiffs. Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Romine v.

Acxiom Corp., 296 F.3d 701, 711 (8th Cir. 2002).

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

The only named defendants, the Board of Curators and Dr. Kreimid, assert that all the claims against them, (Count I (violation of 42 C.F.R § 483.25); Count II (violation of 198.093 R.S.Mo.); Count IV (malpractice claim against Dr. Kreimid); and Count VI (violation of 42 U.S.C. § 2000d against Board of Curators), should be dismissed for lack of jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(1) and 12(b)(6).[2]

---

[2] Defendants, somewhat confusingly, filed four separate motions to dismiss intermixing various issues in these motions.

In addition, the Board of Curators filed a motion for summary judgment asserting state law based sovereign immunity under R.S.Mo. § 537.600.

I note that the Board and Kreimid do not assert Eleventh Amendment immunity which would have barred suit against these defendants in federal court for several counts.[3]

*Count I - The FNHRA Claim*

Count I asserts a claim under 42 C.F.R. § 483.25. That regulation is one of the many regulations implemented to enforce the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. §§ 1395i-3, 1396r. Defendants assert that the FNHRA does not create a private right of action to enforce a violation of the regulations promulgated under the Act, in this case 42 C.F.R. § 483.25.[4] Defendants move to dismiss this claim.

The majority of courts that have considered whether the FNHRA and its regulations confer a private right of action have concluded that they do not. See Duncan v. Johnson-Mathers Health Care, Inc., 2010 WL 3000718, * 3 (E.D. Ky. July 28, 2010)(finding that the FNHRA "does not have an 'unmistakable' focus on the rights of individual nursing home residents, but

---

[3] The Eleventh Amendment bars suits in federal court against a state by its own citizens. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001). Eleventh Amendment immunity extends to state agencies which are considered an arm of the State. Gibson v. Arkansas Dept. of Correction, 265 F.3d 718, 720 (8th Cir. 2001). A suit against a state employee in his official capacity is a suit against the State of Missouri. Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir.1995). If a complaint is silent about whether a state official is being sued in her official or individual capacity, the court is to interpret the complaint as including only official capacity claims. Id. The University of Missouri and its employees acting in their official capacity are deemed to be an arm of the State of Missouri and are entitled to Eleventh Amendment immunity from suit in federal court. Ormerod v. Curators of University of Missouri, 97 Fed. Appx. 71, 72 (8th Cir. 2004).

[4] The "fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chicago, 441 U.S. 677 (1979).

instead focuses on requirements that the nursing homes must meet in order to become and remain eligible for funding" and concluding there is no private cause of action under the statute including the regulation at 42 C.F.R. § 483.25.); Brogdon ex rel. Cline v. National Healthcare Corp., 103 F. Supp.2d 1322, 1330 (N.D. Ga. 2000)(the FNHRA does not confer a private cause of action for violations of the act)[5]; Tinder v. Lewis County Nursing Home Dist., 207 F. Supp.2d 951, 957 (E.D. Mo. 2001)(same). But see Grammer v. John J. Kane Regional Centers-Glen Hazel, 570 F.3d 520, 532 (3rd Cir. 2009) (finding a private right of action for violations of the FNHRA )(notably the dissent disagreed finding the statute is a product of Spending Clause legislation which did not confer a private right).

These courts reached this conclusion based on the fact that neither the FNHRA nor its regulations expressly provide for a private right of action and on the fact that this legislation was passed under Congress' Spending Clause power. The United States Supreme Court has held that Spending Clause legislation rarely creates implied private enforcement rights and noncompliance with such legislation is almost always resolved solely through action by the Federal Government. Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28 (1981)("In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.") See also Gonzaga University v. Doe, 536

---

[5] The court also cited a list of cases which held that the Medicare and Medicaid Acts, of which the FNHRA is part, do not authorize private causes of actions against nursing homes. See Wheat v. Mass, 994 F.2d 273, 276 (5th Cir.1993); Stewart v. Bernstein, 769 F.2d 1088, 1092-93 (5th Cir.1985); Estate of Ayres v. Beaver, 48 F. Supp.2d 1335, 1339-40 (M.D. Fla.1999); Nichols v. St. Luke Ctr., 800 F. Supp. 1564, 1568 (S.D. Ohio 1992); Chalfin v. Beverly Enters., Inc., 741 F. Supp. 1162, 1170-71 (E.D. Pa.1989); Fuzie v. Manor Care, Inc., 461 F. Supp. 689, 697 (N.D. Ohio 1977).

U.S. 273, 280 (2002)("unless Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement...")(internal quotations omitted).

The majority of courts to consider whether the FNHRA provides an implied private right of action have determined it does not. They find that the language of the statue and the regulations do not establish that Congress "unambiguously intended to create new individual rights or enforceable individual rights of action in the FNHRA." Duncan, 2010 WL 3000718, * 8 (addressing and rejecting the holding in the Grammar case from the 3rd Circuit cited above).

Based on the foregoing cases I find that James cannot assert a private cause of action under 42 C.F.R. § 483.25. As a result, I will grant Defendants' motion to dismiss Count I of the complaint.

*Count II - The Omnibus Nursing Home Act under § 198.003 R.S.Mo., et seq.*

In Count II James asserts that the Defendants violated his rights under Missouri's Omnibus Nursing Home Act, § 198.003 R.S.Mo., et seq. However, any cause of action for a violation of the Act can only be asserted against the owner or operator of the facility. See 198.093 R.S.Mo. In addition, before a suit my be brought for a violation of the Act an aggrieved party must exhaust administrative remedies with Missouri's Attorney General. Id.

Defendants Board of Curators and Dr. Kreimid have moved to dismiss this claim based on James' failure to allege that he has exhausted the administrative remedies as required by Missouri law in § 198.093 and based on sovereign immunity. James has not filed a response to the motion to dismiss this claim.

In addition, the Board of Curator moves for summary judgment on this claim based on

sovereign immunity under Missouri state law, § 537.600 R.S.Mo.[6]

I find that Dr. Kreimid is entitled to have this claim dismissed because he is not alleged to be an owner or operator of the facility at issue.

Moreover, I find that the motion to dismiss should be granted as to the Board of Curators because James has failed to allege, or to provide any evidence in response to the motion to dismiss, that he exhausted his administrative remedies prior to filing his claim under the Act in this suit. In addition, I find that the Board of Curators is entitled to dismissal and to summary judgment of this claim based on sovereign immunity.

*Count IV - Malpractice Claim Against Dr. Kreimid*

The only basis to dismiss the malpractice claim against Dr. Kreimid is a single sentence in Defendants' motion to dismiss [Doc. # 8] which is repeated in the memorandum in support [Doc. # 9], which states that "[s]imilarly, a private physician such as Dr. Kreimid who provides care pursuant to a contract with the State is entitled to qualified immunity." The complaint does not allege that Dr. Kreimid was providing medical care based on a contract with the State of Missouri. Defendants have not submitted any evidence to support this employment relationship. Although the claim against Dr. Kreimid may be subject to dismissal and / or summary judgment because of his employment relationship with the State of Missouri, the record before me does not support such a conclusion. As a result Defendants' motion to dismiss as to this claim will be denied.

---

[6] James does not dispute the general premise that the Board of Curators is entitled to state sovereign immunity under § 537.600 R.S.Mo. Although James asserts that the Board's sovereign immunity may be subject to a limited waiver because the Board was covered by insurance, the Board has clearly established in its summary judgment papers that it did not waive sovereign immunity by procuring insurance

*Count VI - Violation of 42 U.S.C. § 2000d Against Board of Curators*

Under federal law "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

In his complaint, James alleges that the Board of Curators violated § 2000d. He alleges that the Board of Curators receives federal financial assistance. He also alleges that the Board of Curators denied him benefits and discriminated against him by ***negligently*** failing to observe, treat, administer, monitor, examine, diagnose, and care for him to prevent him from getting bedsores because he is African-American.

The Board of Curators moves to dismiss this claim (and for summary judgment) based on sovereign immunity. In addition, the Board asserts that this claim should be dismissed because the § 2000d does not permit a private cause of action for enforcement and because James fails to provide sufficient facts to state a claim.

The Board's grounds for dismissal and summary judgment based on sovereign immunity and lack of a private cause of action are without merit. Congress has set aside a states' defense of sovereign immunity for violations of § 2000d. 42 U.S.C. 2000d-7. In addition, a person may bring a private cause of action for violations of § 2000d. <u>Alexander v. Sandoval</u>, 532 U.S. 275, 280 (2001)(private individuals may sue to enforce § 2000d). However, such a claim must be based on intentional discrimination. <u>Id.</u>

James asserts throughout his complaint and specifically in his § 2000d claim[7] that his

---

[7] In paragraph 63 of the complaint he bases his § 2000d claim on negligence.

injury was the result of negligence. He does not assert a claim of intentional discrimination nor does he offer any factual allegations that would support a claim of intentional discrimination. I note that in his prayer for relief under this claim James asserts that "the discrimination was willful, wanton, and outrageous and constituted gross negligence an demonstrated a conscious and reckless disregard.," however, this statement is clearly a legal conclusion that is asserted in an attempt to support a claim for punitive damages.

As a result, I find that the motion to dismiss this claim should be granted.

*Motion to Transfer Venue*

Because James' malpractice claim has survived the initial motions for dismissal and summary judgment I now address whether this case would better be addressed in the United States District Court for the Western District of Missouri. The incident that forms the basis of this suit arose from James' treatment at a nursing facility located in Mount Vernon, Missouri. Defendants assert that this matter should have been filed in the United States District Court for the Western District of Missouri which has jurisdiction over the part of the state where this cause of action arose. Defendants' have moved to transfer the case to that court.

Under 28 U.S.C. § 1404(a) a court may transfer a case to another district court for the convenience of the parties and witnesses in the interest of justice. If this case stayed in federal court I would be inclined to grant Defendants' request to transfer the case to the Western District because all of the facts that gave rise to this lawsuit occurred in that district and the witnesses, records, and facility where James' alleged injury occurred are in that district.

However, because only a state malpractice claim remains in this matter I will decline to exercise supplemental jurisdiction in this matter and will dismiss the case. See 28 U.S.C. § 1367

-10-

(c).

Accordingly,

**IT IS HEREBY ORDERED that** Defendants Board of Curators and Dr. Mosbah Kreimid's motions to dismiss [#8, 10, 12, and 14] and motion for summary judgment [# 31] are granted in part and denied in part as stated above.

**IT IS FURTHER ORDERED that** Defendants' motion to transfer this matter to the United States District Court for the Western District of Missouri [#14] is **DENIED**.

**IT IS FURTHER ORDERED that** the Court declines to exercise supplemental jurisdiction over the remaining state claim in this matter and this case is hereby **DISMISSED** without prejudice.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of January, 2011.